## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

Donna Holmes,

                Plaintiff,

     v.

Securitas, Security Services USA, Inc.

                Defendant.

Case No. 3:24-cv-804

**COMPLAINT**

**Jury Trial Demanded**

## INTRODUCTION

The Plaintiff Donna Holmes ("Ms. Holmes" or "Plaintiff") by and through undersigned counsel, hereby complains and alleges the following:

1.     It is rare to hear of a seventy (70) year-old woman (or man) who still works fulltime as a security guard. Yet, Ms. Holmes has worked over 40 hours per week at the same company for years. Ms. Holmes has been employed with the security company, Securitas, since 2015. She keeps herself in great shape. Unfortunately, several years ago, she was almost forced to resign from her job due to daily advances by another security guard. Her requests for him to stop were ignored and her cries for intervention went unaddressed by the company.

2.     In 2021, Securitas, failed to act after Ms. Holmes raised multiple sexual harassment complaints to management. The harassment persisted for months and caused Ms. Holmes to fear for her physical safety at work daily. This caused Ms. Holmes to suffer from a significant amount of stress. It got so bad her medical provider requested that she either quit her job or take time away from work. Ms. Holmes chose the latter.

1

3.     She requested twelve weeks of medical leave so her body could physically recover and retained counsel while she was out of work. With the assistance of counsel, the Parties settled their dispute, and Ms. Holmes returned to work in August 2021.

4.     While Ms. Holmes was on leave, or shortly after her return to work, Securitas began using a new electronic system for its employees to access their paystubs. Employee paystubs reflect the number of hours the employee worked, their  , and any deductions made from the employee's paycheck during the pay period. For some undetermined reason, Ms. Holmes was unable to access Securitas' new system to view her paystubs when she returned to work. She complained to management, and her immediate supervisor escalated the matter multiple times. Yet, Securitas refused to provide her with access to the system or her previous paystubs.

5.     Ms. Holmes believed that Securitas was not paying her for all the hours she worked, but she could not prove it. She also believed that Securitas was not paying her the correct pay rate. Finally, in May 2024, Ms. Holmes obtained access to a year's worth of paystubs thanks to assistance from the North Carolina Department of Labor. The evidence from their investigation confirmed her suspicions. Securitas had shortchanged Ms. Holmes by a number of hours. Ms. Holmes compared Securitas' paystubs to about two dozen hard copies of time sheets that she had obtained. Securitas ceased communicating with Ms. Holmes regarding access to her previous paystubs after she notified them of the pay discrepancies.

6.     Ms. Holmes has filed this lawsuit because Securitas refuses to make the situation right. She is filing charges for Failure to Pay Overtime Wages (Count One) and Retaliation in Violation of Title VII (Count Two)

**PARTIES, JURISDICTION AND VENUE**

7.     Plaintiff is a resident of Mecklenburg, County, North Carolina.

2

8.     Defendant, Securitas Security Services USA, Inc, ("Defendant"), is a foreign corporation registered in North Carolina and was doing business in North Carolina at all relevant times.

9.     Plaintiff worked for Defendant through its Charlotte office located at 10150 Mallard Creek Road, Suite 104, Charlotte, NC 28262.

10.     This is an action for damages arising under Title VII of the Civile Rights Act of 1964 ("Title VII") 42 U.S.C. §2000e et seq. and for unlawful retaliation of the above statute. This is also an action for damages under Section 16(b) of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §201, et. seq.

11.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. §1343 (a)(4) (civil rights action), 42 U.S.C. §2000e-5(f)(3) (unlawful discrimination and retaliation in employment), and 29 U.S.C. § 217 (injunction proceedings). This Court also has supplemental jurisdiction over Plaintiff's related claims arising under state and local laws pursuant to 28 U.S.C. § 1367(a).

12.     All material allegations relative to the named defendant contained in this Complaint occurred in the State of North Carolina, Mecklenburg County. Therefore, venue properly lies in the Charlotte Division of the United States Court for the Western District of North Carolina pursuant to 28 U.S.C. §1391(b)(2).

13.     At all relevant times, Defendant was engaged in interstate commerce and employed 15 or more employees for each working day during each of the calendar workweek and is therefore subject to the provisions of the statutes outlined herein.

## **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

14. On May 23, 2024, Plaintiff filed a Charge of Retaliation against Defendant named in this action with the Equal Employment Opportunity Commission ("EEOC").

15. On June 6, 2024, Plaintiff received the "Notice of Right to Sue" from the EEOC.

16. This action is timely filed pursuant to 42 U.S.C. §2000e-5(f).

17. Prior to filing this action, Plaintiff exhausted the administrative remedy on all claims pled hereunder.

## **GENERAL ALLEGATIONS**

18. Plaintiff incorporates all the allegations in the preceding paragraphs as though fully set forth herein.

19. Defendant is a security services company that provides security guarding, mobile patrolling, monitoring, investigation, and related consulting services.

20. Defendant operates in over fifty-three (53) countries worldwide.

21. Plaintiff began her employment with Defendant as a supervisor on or about December 7, 2015.

22. Plaintiff has no disciplinary history with the company.

23. Defendant promoted Plaintiff to Security Coordinator in 2019.

24. In the Fall of 2019, Plaintiff began receiving unwanted and unwelcomed sexual advances from a security guard ("Harasser") who worked in the same building as Plaintiff.

25. Harasser was over six (6) feet tall and weighed approximately 300 pounds.

26. By contrast, Plaintiff is approximately five (5) feet tall and weighs approximately 120 pounds.

27. Plaintiff was often alone during her shift. Although she declined Harasser's advances, she feared for her physical safety due to his large size and stature.

28.    On October 11, 2019, Harasser sent his first text message to Plaintiff. She is unaware of how Harasser obtained her phone number.

29.    After his initial text message, Harasser began calling and texting Plaintiff incessantly.

30.    Plaintiff repeatedly asked Harasser to stop contacting her and told him that she was not interested, but Harasser persisted.

31.    Plaintiff reported Harasser's actions to her then supervisor, Tiffani Clyburn, and Ms. Clyburn reported the matter to her superior, Randy Biggs ("Biggs"), the Regional Security Manager.

32.    Biggs told Plaintiff that he would have a talk with Harasser. However, Harasser continued his advances toward Plaintiff following their conversation.

33.    Plaintiff eventually blocked Harasser's phone number, but he continued visiting the building floors where Plaintiff was assigned.

34.    Harasser often made unwelcomed advances during those visits.

35.    Plaintiff often saw Harasser waiting outside of the building as she arrived for her shift. He would often make advances as he opened the door for her to enter the building.

36.    Plaintiff requested that she be allowed to use a different entrance to avoid Harasser, but Biggs denied her request.

37.    Later, when Harasser was transferred to a new building, Defendant transferred Plaintiff to work in the same building.

38.    These events caused severe stress and anxiety for Plaintiff and negatively affected her physical health.

5

39.     Upon her doctor's advice, Plaintiff requested twelve (12) weeks of leave under the Family Medical Leave Act ("FMLA") to recover and remove herself from the toxic work environment.

40.     While on FMLA leave, Plaintiff retained counsel to represent her in a sexual harassment claim against Defendant.

41.     Plaintiff's counsel sent a demand letter to Defendant in May 2021.

42.     Plaintiff's issuance of the demand letter through counsel was a protected activity.

43.     The Parties reached a settlement in July 2021 to resolve Plaintiff's sexual harassment claims.

## RETALIATION
### Change of Work Environment

44.     Plaintiff returned to work in August 2021.

45.     Upon Plaintiff's return, Defendant transferred her to a new worksite location and promised her a rate of $17.00 per hour.

46.     Defendant began retaliating against Plaintiff shortly after she began working at the new worksite location.

47.     Plaintiff was often required to work twelve (12) hour shifts.

48.     At the previous worksite, Plaintiff primarily worked indoors while seated at a desk.

49.     At the new worksite location, Plaintiff was required to work outside, in ninety-five plus (95+) degree weather, and she was required to stand for much of the 12-hour shift.

50.     Defendant initially assigned Plaintiff a work schedule of less than 40 hours a week at the new worksite location, but later provided a full-time work schedule after communicating with Plaintiff's counsel.

### Refusal to Provide Access to Paystubs or Compensate for All Hours Worked

6

51.     Shortly after Plaintiff's transition to the new worksite location, she began having issues accessing her paystubs.

52.     Specifically, Plaintiff was unable to access her paystubs in Defendant's Employee Direct Access system ("EDA").

53.     Plaintiff notified her immediate supervisor that she was unable to access her paystubs in the EDA system.

54.     Plaintiff also told management that she could not confirm whether she was receiving the proper pay rate or if Defendant was compensating her for all hours worked due to her inability to access her paystubs.

55.     Plaintiff escalated her inability to access Defendant's EDA system and her paystubs on multiple occasions to Vice President, Andrea Hoepner ("Hoepner).

56.     Hoepner did not address Plaintiff's issues regarding Defendant's EDA system or her access to past paystubs.

57.     Plaintiff also escalated her lack of EDA access to Business Manager, Allan Campbell ("Campbell").

58.     Campbell also failed to address Plaintiff's issues regarding Defendant's EDA system or provide her with access to past paystubs.

59.     Plaintiff's immediate supervisor, Brian Broomfield ("Broomfield"), escalated Plaintiff's issues to senior management on multiple occasions. However, Defendant refused to provide Plaintiff with access to the EDA system or copies of her past paystubs.

60.     Broomfield inquired with Campbell about Plaintiff's pay rate and work schedule in late summer of 2021.

7

61.     In response, Campbell told Broomfield that Plaintiff had sued Defendant over harassment. Campbell identified this as the reason Plaintiff was reassigned to Broomfield's worksite location and why she received a different rate of pay from other employees.

62.     During a separate phone conversation regarding a scheduling conflict, Campbell told Broomfield, "Don't worry (about Plaintiff). She will quit."

63.     Plaintiff's complaints to Human Resources and other members of management about her inability to access her paystubs received little to no response.

64.     Plaintiff believed she was not being compensated for all hours worked, but she could not prove it.

65.     In February 2024, Plaintiff retained counsel to help obtain access to her paystubs.

66.     Despite numerous communications, Defendant failed to provide Plaintiff with access to its EDA system or provide Plaintiff with her past paystubs.

67.     On February 22, 2024, Plaintiff informed Defendant of her intent to request an investigation by the North Carolina Department of Labor ("NCDOL") due to Defendant's failure to provide her paystubs.

68.     Plaintiff filed a complaint with the NCDOL on or about May 1, 2024.

69.     Based on information and belief, the NCDOL requested that Defendant provide copies of Plaintiff's paystubs for the past year.

70.     Following its investigation, the NCDOL provided Plaintiff with copies of her paystubs from March 24, 2023 through April 25, 2024.

71.     Based on information and belief, the NCDOL did not pursue further action against Defendant after it obtained Plaintiff's paystubs.

72.     At Plaintiff's worksite, Defendant records every employee's daily number of hours worked on a paper time sheet.

73.     Employees verify the number of hours they worked by initialing the time sheet.

74.     Based on information and belief, the number of hours from the timesheet are then transferred into Defendant's electronic system.

75.     A comparison of twenty-four (24) weeks of Defendant's paper time sheets from 2023 and the paystubs provided by the NCDOL showed multiple discrepancies between the number of hours Plaintiff worked and the number of hours she was paid.

76.     On May 24, 2024, Plaintiff informed Defendant that there were discrepancies between the number of hours she worked in 2023 and her actual pay.

77.     Plaintiff also informed Defendant that she filed an EEOC charge due to Defendant's continued retaliation against her since her protected activity in 2021.

78.     Defendant's counsel ceased communicating with Plaintiff's counsel regarding her paystubs after receipt of this communication.

79.     To date, Defendant has refused to provide Plaintiff with access to any paystubs for hours she worked prior to March 2023.

80.     Defendant has not inquired about Plaintiff's pay discrepancies, the wages owed, or in any way attempted to resolve Plaintiff's pay dispute.

**Refusal to Provide Mandatory Training and Licensing**

81.     Defendant requires that its security guard employees maintain a Private Protective Services Board ("PPSB") license.

82.     The license is issued by the North Carolina Department of Public Safety and must be renewed every two years.

9

83.     Defendant submits the renewal application on behalf of its employees.

84.     Despite multiple reminders and escalations by Broomfield, which began on or about May 2023, Defendant repeatedly failed to submit Plaintiff's PPSB license renewal paperwork. Plaintiff's renewal paperwork was due in May 2024.

85.     Defendant also requires that its security guard employees complete mandatory online training such as Active Shooter, Limits to Authority & Use of Force, and Anti-Terrorism.

86.     Despite multiple requests from Broomfield, Defendant has failed or refused to sign up Plaintiff for its mandatory training.

87.     Although Defendant has threatened Plaintiff with termination if she does not complete the mandatory online training, Defendant has not signed up Plaintiff for this training as of the filing date of this Complaint.

88.     Defendant's actions were done with the intent to cause Plaintiff stress and create a hostile or offensive work environment to force Plaintiff's resignation.

**Count One**
**(Failure to Pay Overtime Wages in Violation of FLSA)**

89.     Plaintiff incorporates all the allegations in the preceding paragraphs as though fully set forth herein.

90.     Defendant willfully failed to pay Plaintiff for all hours worked and overtime wages as set forth in the Fair Labor and Standards Act.

91.     Defendant intentionally prevented Plaintiff's access to her paystubs to continue Plaintiff's deprivation of the wages and overtime wages she earned.

92.     Defendant intentionally failed to provide Plaintiff with an itemized statement of deductions from Plaintiff's wages as required by North Carolina General Statute ("N.C.G.S.") 95-25-13(4).

93.     Plaintiff suffered damages as a result of Defendant's unlawful practices including lost wages and the costs of bringing this action.

94.     Defendant intentionally violated Plaintiff's rights under the FLSA with malice or reckless indifference, and as a result is liable for liquidated damages.

## Count Two
## (Retaliation under 42 U.S.C. §2000e-3(a))

95.     Plaintiff incorporates all the allegations in the preceding paragraphs as though fully set forth herein.

96.     Plaintiff engaged in protected activity by complaining of sexual harassment.

97.     Plaintiff engaged in protected activity by retaining counsel to issue a demand letter regarding her sexual harassment claims.

98.     Defendant failed to investigate Plaintiff's claims of sexual harassment and issue appropriate remedies.

99.     Defendant failed to interview key witnesses regarding Plaintiff's claims.

100.    Defendant failed to take any steps to deter future wrongful or illegal conduct.

101.    Defendant failed to impose any proper remedial measures in connection with Plaintiff's complaint of sexual harassment or properly investigate such claims as a way to punish Plaintiff for her complaint of sexual harassment and for retaining an attorney to represent her in her claims.

102.    In violation of 42 U.S.C. §2000e-3(a), Defendant retaliated against Plaintiff after she complained of sexual harassment. By way of non-exhaustive examples, Defendant retaliated against Plaintiff by:

a.  Removing Plaintiff from her previous work location and relocating her to a new work location.

11

b. Failing to pay Plaintiff for all hours worked.

c. Failing to pay Plaintiff time and a half for all overtime hours worked.

d. Failing to provide Plaintiff with access to paystubs so she could verify that she was compensated for all hours worked.

e. Failing to provide Plaintiff with mandatory training to perform her job and threatening termination for not having the mandatory training.

103.    These acts were done to punish Plaintiff and would have dissuaded a reasonable employee from engaging in protected activity.

104.    Plaintiff may be unaware of additional detrimental acts constituting retaliation.

105.    The actions taken by Defendant were done in response to Plaintiff's protected complaints of sexual harassment, were designed to dissuade a reasonable worker from complaining about sexual harassment or otherwise engaging in protected activity, and such conduct by Defendant constitutes illegal retaliation, prohibited by federal and state statutes.

106.    Due to its illegal actions, Defendant must pay damages in an amount to be determined at trial for compensatory damage including emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

107.    Defendant engaged in such actions with malice or reckless indifference to Plaintiff's federally protected rights, and Defendant must pay Plaintiff an additional amount in punitive damages for the sake of example and by way of punishment in an amount deemed sufficient by the jury.

108.    Plaintiff has had to obtain the services of an attorney to protect her rights and secure compensation for the damages incurred when Defendant violated Title VII and the FLSA, and therefore, she is entitled to recover reasonable attorneys' fees against Defendant.

## JURY TRIAL DEMANDED

WHEREFORE, the Plaintiff prays the Court:

1. Enter a judgment against Defendants and order Defendants to pay Plaintiff compensatory and punitive damages;

2. Award Plaintiff unpaid wages plus interest and liquidated damages for all unpaid wages;

3. Award Plaintiff all reasonable costs and attorney's fees incurred in connection with this action;

4. Award Plaintiff such other and further equitable relief as the Court deems appropriate under the circumstances; and

5. Grant Plaintiff a trial of this matter by a jury.

Respectfully submitted

Dated September 3, 2024

*/s/ Kirton M. Madison*
Kirton Madison
North Carolina State Bar No. 43029
Madison Law, PLLC
8936 Northpointe Executive Park Drive
Suite 240-260
Huntersville, NC 28078
Telephone: (704) 981-2790
Facsimile: (704) 930-0648
kmadison@madlawpllc.com
*Attorney for Plaintiff, Donna Holmes*

13

## **CERTIFICATE REGARDING THE USE OF ARTIFICIAL INTELLIGENCE**

1.  No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexus, FastCase, and Bloomberg;

2.  Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction (or the party making the filing if acting pro se) as to the accuracy of the proposition for which it is offered, and the citation to authority provided.


Dated September 3, 2024

> Respectfully submitted
> By: / s / *Kirton M. Madison*
>> Kirton Madison
>> North Carolina State Bar No. 43029
>> Madison Law, PLLC
>> 8936 Northpointe Executive Park Drive
>> Suite 240 – 260
>> Huntersville, NC 28078
>> Telephone: (704) 981-2790
>> Fax: (704) 930-0648
>> kmadison@madlawpllc.com
>> *Attorney for Plaintiff Donna Holmes*

14